ELLEN F. ROSENBLUM
Oregon Attorney General
TIMOTHY D. SMITH #914374
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market St
Portland, OR 97201
Telephone: (503) 934-4452
Fax: (503) 373-7067
Email: tim.smith@doj.state.or.us

Attorneys for Plaintiff State of Oregon
acting by and through its Department of Environmental Quality

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| THE STATE OF OREGON, acting by and through the OREGON DEPARTMENT OF ENVIRONMENTAL QUALITY,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED STATES OF AMERICA; DEPARTMENT OF THE ARMY; ARMY CORPS OF ENGINEERS,<br><br>    Defendants. | Case No.  3:20-cv-01799<br><br>**COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff the State of Oregon, acting by and through the Oregon Department of

Environmental Quality (the "State of Oregon"), alleges as follows:

### NATURE OF THE ACTION

1.  This is a civil action for recovery of costs under Section 107 of the

Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42

U.S.C. § 9607 and under ORS 465.200 – 465.545, and its regulations at OAR 340-122-0010 to

0140 (the "Oregon Cleanup Law"). The State of Oregon seeks to recover the un-reimbursed

Page 1 - COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT

costs it has incurred to date and that it continues to incur every month in connection with the historic, ongoing and threatened release of hazardous substances into the environment at, on, and from Bradford Island, which is located at the Bonneville Dam in the Columbia River (the "Site") in Multnomah County, Oregon.  The State of Oregon also seeks a declaration that the Voluntary Cleanup Agreement (the "Agreement") executed by Defendants on February 18, 1998 is enforceable and that the CERCLA response costs and/or remedial action costs incurred by the State of Oregon and paid by defendants to date were properly paid to the State of Oregon.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action and the defendants pursuant to 28 U.S.C. § 1331 because this case involves a civil action arising under the laws of the United States including Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over related state law claims, and under Sections 120(a)(1) and 120(a)(4) of CERCLA, 42 U.S.C. § 9620(a)(4), for state removal and remedial actions that apply to facilities owned or operated by a department, agency, or instrumentality of the United States. The Court also has authority to provide relief under the Declaratory Judgment Act, 28 U.S.C. § 2201.

3.      Venue is proper in this District under Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b), because the claims arose, and the threatened and actual release of hazardous substances occurred and is occurring, within the District of Oregon. Assignment to the Portland Division of this District is proper pursuant to Local Rule 3-2(3) because a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property that is the subject of the action is situated within Multnomah County, which falls within the Portland Division.

## PARTIES

4.      Plaintiff, the State of Oregon, is a sovereign state in the United States of America existing under the constitution of the State of Oregon. The Oregon Department of Environmental

Page 2 - COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT

Quality ("DEQ") is an agency of the State of Oregon that is tasked with enforcing Oregon's land, air, and water pollution laws. DEQ has authority pursuant to Section 104(d) of CERCLA, 42 U.S.C. § 9604(d), Section 120 of CERCLA, 42 U.S.C. § 9620(a)(4), and the Oregon Cleanup Law, ORS chapter 465, to ascertain the nature and extent of contamination at, from, and to the Site, and DEQ has the authority to ensure the implementation of an effective cleanup of the Site in a manner consistent with the requirements for review and approval of the cleanup of hazardous substances.

5.      Defendants Department of the Army and the Army Corps of Engineers (the "Corps") (collectively "Defendants") are agencies of the Defendant United States; are the current owners and operators of the Site within the meaning of Section 107(a)(1) of CERCLA, 42 U.S.C. § 9607(a)(1); and owned and operated certain facilities on the Site at the time of disposal of hazardous substances at the Site, within the meaning of Section 107(a)(2) of CERCLA, 42 U.S.C. § 9607(a)(2).

## STATUTORY FRAMEWORK

6.      The State of Oregon's Legislative Assembly has found that: "(a) The release of a hazardous substance into the environment may present an imminent and substantial threat to the public health, safety, welfare and the environment; and (b) The threats posed by the release of a hazardous substance can be minimized by prompt identification of facilities and implementation of removal or remedial action." ORS 465.200(1).

7.      Following its findings in ORS 465.200(1), the State of Oregon's Legislative Assembly has declared that:

(a) It is in the interest of the public health, safety, welfare and the environment to provide the means to minimize the hazards of and damages from facilities.

(b) It is the purpose of ORS 465.200 to 465.545 and 465.900 to:

(A) Protect the public health, safety, welfare and the environment; and

Page 3 - COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT
DM #10432645 v8

Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
(503) 934-4400 / Fax: (503) 373-7067

(B) Provide sufficient and reliable funding for the Department of Environmental Quality to expediently and effectively authorize, require or undertake removal or remedial action to abate hazards to the public health, safety, welfare and the environment."

8.      To achieve these environmental goals, the State of Oregon's Legislative Assembly has authorized DEQ to:

"(a) [u]ndertake independently, in cooperation with others or by contract, investigations, studies, sampling, monitoring, assessments, surveying, testing, analyzing, planning, inspecting, training, engineering, design, construction, operation, maintenance and any other activity necessary to conduct removal or remedial action and to carry out the provisions of ORS 465.200 to 465.545 and 465.900; and (b) [r]ecover the state's remedial action costs." ORS 465.210(1) (the "Environmental Cleanup Program").

The Environmental Cleanup Program protects human health and the environment by identifying, investigating, and remediating sites contaminated with hazardous substances. The program's objective is to improve sites to the point where no further cleanup action is necessary - as inexpensively and quickly as possible. The Environmental Cleanup Program specifically authorizes DEQ to participate in or conduct activities pursuant to CERCLA. ORS 465.210(2).

9.      Similarly, section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides in part:

"(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of . . .

(4) . . . shall be liable for –

(A) all costs of removal or remedial action incurred by … a State … not inconsistent with the national contingency plan . . ."

10.     CERCLA Section 101(21) defines "person" to include the United States. 42

Page 4 - COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT

U.S.C. § 9601(21).

11.     CERCLA Section 120(a)(1) provides that the United States "shall be subject to, and comply with, this chapter in the same manner and to the same extent, both procedurally and substantively, as any nongovernmental entity, including liability under section 9607 of this title." 42 U.S.C. § 9620(a)(1). Section 120(a)(4) of CERCLA provides that "[s]tate laws concerning removal and remedial action, including State laws regarding enforcement, shall apply to removal and remedial action at facilities owned or operated by a department, agency, or instrumentality of the United States." 42 U.S.C. § 9620(a)(4).

12.     CERCLA Section 101(9) defines "facility" to include "(A) any building, structure, installation, equipment, pipe or pipeline, (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located . . . ." 42 U.S.C. § 9601(9).

13.     CERCLA Section 101(24) defines "remedial action" to include "those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances so that they do not migrate to cause substantial danger to present or future public health or welfare or the environment. . . ." 42 U.S.C. § 9601(24).

## FACTUAL ALLEGATIONS

14.     The Site is part of the Bonneville Dam complex, which is located on the Columbia River at River Mile (RM) 146.1, approximately 40 miles east of Portland, Oregon.

15.     The Site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), and ORS 465.200(13).

Page 5 - COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT

16.     Defendants currently own and operate the Site as part of Bonneville Dam and Lock, including a visitor center, fish ladders, a service center building, an equipment building, and a sandblast building.

17.     From approximately 1942 until 1982, the Defendants managed and disposed of waste materials at a landfill in excavated pits or existing depressions at the eastern end of the Site ("landfill"). Waste materials placed in the landfill included household waste, facility-related waste (e.g., grease, light bulbs, sandblast grit), electrical debris, light ballasts, metal debris, metal cables, building materials containing asbestos, burned debris, wood debris, rubber tires, and mercury vapor lamps; pesticides/herbicides were mixed and rinsed from application equipment in this area.

18.     Disposal and handling practices by the Defendants at the landfill have impacted the Site's soil and groundwater with petroleum hydrocarbons, polycyclic aromatic hydrocarbons ("PAHs"), metals, polychlorinated biphenyls ("PCBs"), and pesticides/herbicides.

19.     Directly north of the landfill, the Defendants disposed of electrical equipment debris directly into the Columbia River. This equipment included light ballasts, electrical insulators, lightning arresters, electrical switches, rocker switches, a breaker box, and electrical capacitors. This disposal resulted in releases of PCBs, PAHs, and various metals into the surrounding river sediment.

20.     West of the landfill on the north end of the Site, the Defendants disposed of electrical light bulb debris on a steep slope extending into the Columbia River ("Bulb Slope"). Materials disposed by the Defendants at the Bulb Slope included internal and external light bulbs, fluorescent light bulbs, and automobile light bulbs as well as other electrical lighting waste. Disposal at the Bulb Slope has resulted in releases of lead, mercury, PCBs, and total petroleum hydrocarbons (TPH) to the Site's surface soils. At the base of the Bulb Slope, much of the contaminated soil has migrated into the Columbia River through wave erosion and slope failure.

DM #10432645 v8

Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
(503) 934-4400 / Fax: (503) 373-7067

21.    From 1958 until 1988, the Defendants used the sandblast building at the Site for sandblasting operations and painting of equipment used at the facility. Defendants then disposed of the sandblast grit onto open areas surrounding the sandblast building (the "Sandblast Area"). The sandblast grit consisted of paint materials that contain metallic (including lead and zinc chromate) and organometallic compounds. This disposal of spent sandblast grit has resulted in releases of metallic and organometallic constituents into the Site's surface and subsurface soil and potentially into the Columbia River via the storm water drainage system. Other operations by the Defendants at the Sandblast Area included electrical transformer disassembly and aboveground storage of hazardous waste materials, which resulted in additional releases of PCBs, metals, pesticides, TPH, PAHs, and volatile organic compounds ("VOCs") to Site soils.

22.    From the 1940s until the 1970s, the Defendants used a pistol range at the Site for small arms target practice. Soils in the vicinity of the pistol range on the south end of the Site have been impacted with metals associated with this operation.

23.    Beginning in 1997, the Defendants conducted soil, groundwater and sediment investigations at the Site in coordination with DEQ.

24.    Specifically, pursuant to Executive Order 12580, the Corps has been the lead agency for the Site since 1997, when the Corps' Portland District began conducting investigations at the Site in coordination with DEQ under DEQ's Voluntary Cleanup Program.

25.    DEQ's Voluntary Cleanup Program provides oversight to property owners and others wishing to investigate and clean up hazardous substance sites in a voluntary, cooperative manner. The program's goal is to increase the number of remediated sites by streamlining the cleanup process while ensuring compliance with Oregon environmental regulations. Projects range from simple sites with a limited amount of contaminated soil to complex sites with multiple contaminants in soil, groundwater, surface water, sediment, and/or air.

26.    Pursuant to ORS 465.260(2) & (4) as applied to the Site by Section 120 of CERCLA, 42 U.S.C. § 9620(a)(4), DEQ "may authorize any person to carry out any removal or

Page 7 - COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT

remedial action in accordance with any requirements of or directions from the director, if the director determines that the person will commence and complete removal or remedial action properly and in a timely manner" or "require a person liable under ORS 465.255 to conduct any removal or remedial action or related actions necessary to protect the public health, safety, welfare and the environment." Pursuant to ORS 465.330, DEQ is required to recover its remedial action costs.  Consistent with Executive Order 12580, pursuant to Section 120 of CERCLA, 42 U.S.C. § 9620(a)(4), and pursuant to ORS 465.260 and 465.330, on February 18, 1998, the Corps executed the Agreement. A true and correct copy of the Agreement is attached as Exhibit 1 and is incorporated herein by reference.

27.    The Agreement confirmed that DEQ would review and provide oversight of the Corp's investigation and/or cleanup of hazardous substances at the Site. DEQ agreed to review environmental documents submitted by the Corps regarding the investigation and/or cleanup of the Site.

28.    By letter dated September 18, 2019 to DEQ, the Corps confirmed that the Corps entered into the Agreement to "enable the [DEQ] to provide significant oversight in addressing" the "historic releases of hazardous substances" at the Site.

29.    In exchange for DEQ's review and oversight of the Corps' investigation and/or cleanup of hazardous substances at the Site, the Corps agreed to pay DEQ's project costs including direct costs and indirect costs. According to the Agreement, DEQ's direct costs included site-specific expenses and legal costs. According to the Agreement, DEQ's indirect costs included general management and support costs.

30.    In the Agreement, DEQ agreed to provide monthly invoices to the Corps for DEQ's project costs related to the Corps' investigation and/or cleanup of hazardous substances at the Site including both direct costs and direct costs. Under the Agreement, the Corps agreed to pay DEQ's monthly invoices for DEQ's costs including both direct costs and direct costs.

Page 8 - COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT
DM #10432645 v8

Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
(503) 934-4400 / Fax: (503) 373-7067

31.    The Corps' investigation confirmed that the Corps' past practices at the Site resulted in releases of hazardous substances into the soil, groundwater, and surface water in the Columbia River. Contaminants of Concern ("COCs") include petroleum hydrocarbons, polycyclic aromatic hydrocarbons ("PAHs"), metals (e.g., lead and mercury), polychlorinated biphenyls ("PCBs"), pesticides/herbicides, and volatile organic compounds ("VOCs").

32.    The Corps' contamination of the Site has caused significant impacts to the river sediment and the fractured bedrock river-bottom in the vicinity of the Site. The full nature and extent of in-river contamination is undefined. Resident fish such as smallmouth bass caught near the Site contain extremely high concentrations of PCBs as well as other COCs. Despite multiple removal actions, sediment, clam and fish tissue sampling in 2011 indicate that COC concentrations have not declined and have actually increased in fish. Impacted surface soils in certain parts of the Site such as the Sandblast Area and Bulb Slope remain uncontained (e.g., sandblast grit triggering RCRA hazardous waste criteria). Stormwater discharge from contaminated areas of the Site have not been regulated or monitored pursuant to a permit issued under the National Permit Discharge Elimination System (NPDES). Recent (2018–2019) stormwater and catchbasin sampling results from the Sandblast Area indicate that stormwater continues to be an ongoing source of contamination to the river. Porewater and near-bottom surface water sampling was conducted in 2018 in order to identify source areas, but results were inconclusive. Additional stormwater sampling, near-bottom river water sampling, and sampling of fish, clams and crayfish are being conducted in 2020.

33.    Following execution of the Agreement, Defendants have undertaken response actions at the Site, including, but not limited to, removal actions in the Columbia River in 2002 and 2007, and a draft Remedial Investigation ("RI") report in 2010 and revised RI report in 2012.

34.    Investigations conducted by the Defendants and DEQ, including the draft RI, have shown that as a result of the Defendants' waste disposal practices, soil, sediments and groundwater are contaminated with "hazardous substances" as that term is defined in Section

Page 9 - COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT

101(14) of CERCLA, 42 U.S.C. § 9601(14) and ORS 465.200(16).

35.    Hazardous substances, including PCBs and metals, were found in samples of sediments in the Columbia River at the Site.

36.    Hazardous substances, including PCBs, PAHs, TPH, VOCs, SVOCs, pesticides, and metals, were found in samples of surface and subsurface soils at the Site.

37.    Hazardous substances, including PCBs and metals, were found in samples of fish and other aquatic species in the Columbia River at and near the Site.

38.    Hazardous substances, including PAHs, TPH, VOCs, SVOCs, butyl tins, and metals, were found in samples of groundwater at the Site.

39.    There were and are "releases" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22) and ORS 465.200(22), as well as the threat of continuing releases, of hazardous substances into the environment at and from the Site.

40.    Pursuant to the Agreement, pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and pursuant to ORS 465.260 and ORS 465.330, beginning on or after January 1, 1998 to the present, DEQ issued monthly invoices to the Corps for DEQ's project costs related to the Corps' investigation and/or cleanup of hazardous substances at the Site including both direct costs and direct costs. Following the Agreement and pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and ORS 465.260, the Corps paid DEQ's monthly invoices for DEQ's costs including both direct costs and direct costs.

41.    By letter dated September 18, 2019, pursuant to the termination clause in the Agreement, the Corps gave 15 days' notice of the termination of the Agreement effective October 4, 2019.

42.    By letter dated July 31, 2020 to DEQ, the Corps alleged that Executive Order 12580 and CERCLA "did not, and do not allow for the cost reimbursement arrangements set forth in the [Agreement]." The Corps alleged that the "Corps is not, and was not, legally permitted to pay [DEQ's] costs under the [Agreement]." The Corps further alleged that "the

Page 10 - COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT

Corps will not reimburse DEQ" for future costs. The Corps then stated that it seeks repayment from DEQ of the monies paid to DEQ under the Agreement, and the Corps alleged that the unauthorized payments to DEQ amounted to "the sum of $768,923.40."

43.     On August 20, 2020, the Corps then issued a bill to DEQ for $768,923.40. A true and correct copy of the Corps' August 20, 2020 bill to DEQ is attached as Exhibit 2 and is incorporated herein by reference. In the bill, the Corps alleged that DEQ was "overpaid $768,923.40 for [DEQ's] costs under the Voluntary Cleanup Program." The Corps further alleged that the Corps "is not and was not legal permitted to pay these costs."

44.     Following the Corps' termination of the Agreement, DEQ continued to incur remedial action costs related to the ongoing investigation at the Site. To date, DEQ has incurred costs in excess of $71,000.00 since the Corps terminated the Agreement. Going forward, DEQ will continue to incur remedial actions costs related to the ongoing investigation at the Site and with respect to any future remedial action taken at the Site.

## FIRST CLAIM FOR RELIEF

### (Claim for Recovery of CERCLA Costs and Declaratory Judgment for Future Costs)

45.     The State of Oregon incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

46.     The Defendants are liable parties under Section 107(a)(1) and (2) of CERCLA, 42 U.S.C. § 9607(a)(1)-(2).

47.     From January 1, 1998 to the present, the releases or threatened releases of hazardous substances at the Site have caused the State of Oregon to incur response costs as defined by Sections 101(25) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a), in connection with the Site.

48.     From January 1, 1998 through September 30, 2019, DEQ incurred costs of $768,923.40. From October 1, 2019 to the present, the State of Oregon incurred costs in excess of $71,000. The costs incurred by the State of Oregon from January 1, 1998 to the present in

Page 11 - COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT

connection with response actions at the Site are not inconsistent with the National Contingency Plan, 40 C.F.R. Part 300.

49.    As of September 14, 2020, the State of Oregon has incurred unreimbursed response costs for the Site in an amount in excess of $71,000, and the State of Oregon will continue to incur costs related to the Site going forward.

50.    Pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), the Defendants are liable to the State of Oregon for the costs incurred by DEQ in connection with response actions at the Site. The State of Oregon's costs include reasonable attorneys' fees incurred by the State of Oregon. 42 U.S.C. § 9607(a).

51.    Pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2)(B), the State of Oregon is entitled to a "declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages."

## SECOND CLAIM FOR RELIEF

### ORS 465.255 – Strict Liability – Remedial Action Costs

52.    The State of Oregon incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

53.    Pursuant to Section 120(a)(4) of CERCLA, 42 U.S.C. § 9620(a)(4), the Oregon Cleanup Law, including the laws regarding enforcement, applies to the removal and remedial actions at the Site.

54.    ORS 465.255(1) provides that the "following persons shall be strictly liable for those remedial action costs incurred by the state or any other person that are attributable to or associated with a facility and for damages for injury to or destruction of any natural resources caused by a release:  (a) Any owner or operator at or during the time of the acts or omissions that resulted in the release."

DM #10432645 v8

Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
(503) 934-4400 / Fax: (503) 373-7067

55.     For the purposes of liability under ORS 465.255(1), Defendants are "persons" within the meaning of ORS 465.200(21), and are the past or present "owners or operators" of the Site within the meaning of ORS 465.200(20).

56.     The Contaminants of Concern described in paragraphs 31-38 above are "hazardous substances" within the meaning of ORS 465.200(16).  The presence of these hazardous substances in soils and sediments at the Site constitutes a "release" or "threat of release" of hazardous substances into the environment within the meaning of ORS 465.200(22).

57.     In response to the release of hazardous substances to the environment at the Site, DEQ undertook remedial action measures for the protection of public health and the environment.  DEQ undertook these measures pursuant to its authorities under the state environmental cleanup law, ORS 465.200 – 465.545.

58.     From January 1, 1998 through September 30, 2019, DEQ incurred costs of $768,923.40. From October 1, 2019 to the present, the State of Oregon incurred costs in excess of $71,000. These costs were "remedial action costs" within the meaning of ORS 465.200(24). The Corps was liable for these costs and properly paid DEQ for these costs pursuant to the Agreement, pursuant to Section 120(a)(4) of CERCLA, 42 U.S.C. § 9620(a)(4), and pursuant to ORS 465.325.

59.     To date DEQ has incurred unreimbursed costs at the Site in an amount in excess of $71,000 in undertaking these activities.  These costs are "remedial action costs" within the meaning of ORS 465.200(24) ("'Remedial action costs' means reasonable costs which are attributable to or associated with a removal or remedial action at a facility, including but not limited to the costs of administration, investigation, legal or enforcement activities, contracts and health studies.")

60.     Going forward DEQ will continue to incur remedial action costs within the meaning of ORS 465.200(24) for work at the Site.

Page 13 - COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT

61.     DEQ is authorized to bring an action to recover its remedial action costs pursuant to ORS 465.330.

62.     As an owner or operator at or during the time of the acts or omissions that resulted in the releases described above, Defendants are liable for all DEQ's remedial action costs incurred from January 1, 1998 to the present pursuant to ORS 465.255.

63.     Defendant are also strictly liable for damages for injury to or destruction of any natural resources caused by the releases described above. ORS 465.255(1).

64.     Because Defendant's have not paid the State of Oregon's unreimbursed remedial action costs, DEQ is authorized to bring an action in the name of the State of Oregon in a court of competent jurisdiction to recover the amount owed, plus reasonable legal expenses and an award of prejudgment and post judgment interest at the statutory rate. ORS 465.330(3); ORS 82.010.

65.     Pursuant to the State of Oregon's Uniform Declaratory Judgments Act, ORS 28.010-28.160, "[c]ourts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed … The declaration may be either affirmative or negative in form and effect, and such declarations shall have the force and effect of a judgment."

66.     Pursuant to State of Oregon's Uniform Declaratory Judgments Act, the State of Oregon is entitled to a declaratory judgment on the Corp's liability for all remedial actions costs incurred by DEQ at the Site from January 1998 to the present and for a judgment that will be binding on any subsequent action or actions to recover further remedial action costs.

67.     This Court has jurisdiction over these state law claims pursuant to Section 120(a)(4) of CERCLA, 42 U.S.C. § 9620(a)(4). The Court also has supplemental jurisdiction over these state law claims pursuant to 28 U.S. Code § 1367 because the state law claims that are so related to the federal claims in the action that they form part of the same case or controversy under Article III of the United States Constitution.

DM #10432645 v8

Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
(503) 934-4400 / Fax: (503) 373-7067

### THIRD CLAIM FOR RELIEF

### Declaratory Relief

68.     The State of Oregon incorporates by reference all paragraphs of this complaint set out above as if fully set forth herein.

69.     The Court has authority to provide relief under the Declaratory Judgment Act, 28 U.S.C. § 2201. Specifically, in a case of actual controversy within its jurisdiction, this Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

70.     Pursuant to 28 U.S.C. § 1331 and the State of Oregon's Uniform Declaratory Judgments Act, any person interested under a "written contract or other writing constituting a contract … may have determined any question of construction or validity arising under any such … contract … and obtain a declaration of rights, status or other legal relations thereunder."

71.     A justiciable controversy exists between the State of Oregon and Defendants' with respect to Defendants' duties and obligations under the Agreement.

72.     As a result, a declaratory judgment by the Court is necessary to resolve the controversy between the parties.

73.     Specifically, the State of Oregon seeks a declaration from the Court that the Agreement is and/or was enforceable from its execution on February 18, 1998 through its termination on October 4, 2019 and that as a result, the CERCLA response costs and/or remedial action costs incurred by DEQ and paid by Defendant to date were properly paid to the State of Oregon pursuant to the Agreement.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the State of Oregon, respectfully requests that the Court:

1.     Award the State of Oregon a judgment against the Defendants for all costs incurred by the State of Oregon in connection with the Site from January 1, 1998 to the present,

Page 15 - COMPLAINT FOR CERCLA COST RECOVERY AND DECLARATORY JUDGMENT

including all costs incurred in this action including an award of reasonable attorney's fees, plus an award of prejudgment and post judgment interest at the statutory rate under ORS 82.010;

2.      Pursuant to § 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2) and the State of Oregon's Uniform Declaratory Judgments Act, enter a declaratory judgment finding the Defendants liable for future response costs and/or remedial action incurred by the State of Oregon in connection with the Site;

3.      Pursuant to 28 U.S.C. §§ 1331 and 2201 and the State of Oregon's Uniform Declaratory Judgments Act a declaration that the Agreement is enforceable from its execution on February 18, 1998 through its termination on October 4, 2019 and that as a result, the CERCLA response costs and/or remedial action costs incurred by DEQ and paid by Defendant to date were properly paid to the State of Oregon pursuant to the Agreement.

4.      Award Plaintiff its reasonable legal expenses pursuant to ORS 465.330, and

5.      Grant such other and further relief as this Court deems appropriate.

DATED October 19, 2020.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General

_____s/ Timothy D. Smith_____
TIMOTHY D. SMITH OSB #914374
Senior Assistant Attorney General
Oregon Department of Justice
Civil Recovery Section
tim.smith@doj.state.or.us
Of Attorneys for Plaintiff State of Oregon, by and through its Department of Environmental Quality

DM #10432645 v8

Oregon Department of Justice
100 SW Market St.
Portland, OR 97201
(503) 934-4400 / Fax: (503) 373-7067